**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DRC LV VENTURES, LLC, SCOTT SCHROEDER, MARINE PARK INVESTMENTS, LLC, AND GREENWAY FINANCIAL GROUP, LLC,<br><br>  Plaintiffs,<br><br>  -against-<br><br>IDIN DALPOUR AND MAXBEN HOLDINGS, LLC,<br><br>  Defendants. | Docket No.: 1:23-cv-07827 (JGLC) |

---

## DEFENDANTS IDIN DALPOUR AND MAXBEN HOLDINGS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS ONE, TWO, FOUR, FIVE, NINE, TEN, TWELVE, THIRTEEN AND SIXTEEN OF THE COMPLAINT

MORITT HOCK & HAMROFF, LLP
*Attorneys for Defendants*
James P. Chou, Esq.
Marshall O. Dworkin, Esq.
1407 Broadway, 39th Floor
New York, New York 10018
jchou@moritthock.com
mdworkin@moritthock.com
Tel: (212) 239-2000

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ........................................................................................... 1

LEGAL STANDARD ...................................................................................... 2

I.   PLAINTIFFS' FRAUD CLAIMS SHOULD BE DISMISSED AS THEY ARE
     DUPLICATIVE OF PLAINTIFFS' BREACH OF CONTRACT CLAIMS ............... 3

II.  PLAINTIFFS' FRAUD CLAIMS ALSO FAIL TO SATISFY THE HEIGHTENED
     PLEADING STANDARD OF RULE 9(b) ...................................................... 5

    a.   Plaintiffs Fail To Identify With Specificity What Statements They Relied Upon
         To Support Their Fraud Claims ......................................................... 5

    b.   Plaintiffs Cannot Identify Any Fraudulent Statements To Support Count One or
         Count Two Of The Complaint ............................................................ 6

        i.    Predictive or Opinion Statements of Future Events Are Not Fraudulent
              Statements ............................................................................. 6

        ii.   Plaintiffs Fail To Sufficiently Allege That Any Of The Statements Were
              False ...................................................................................... 9

        iii.  Plaintiffs Cannot Rely On Statements Mr. Dalpour Passed Along From
              Third-Parties .......................................................................... 9

        iv.   None Of The Purportedly Fraudulent Statements Made Through Counsel Can
              Support DRC LV's Fraud Claim ............................................... 10

    c.   Plaintiffs Fail To Allege The Requisite Scienter To Support A Claim Of Fraud. 11

    d.   PLAINTIFFS FAIL TO ALLEGE ECONOMIC LOSS OR DAMAGES
         RESULTING FROM THE PURPORTED FRAUD ............................................ 12

III. PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT
     CLAIMS FAIL AS A MATTER OF LAW ................................................... 13

    a.   Good Faith and Fair Dealing Allegations ............................................. 13

    b.   Unjust Enrichment ....................................................................... 14

i

IV.    PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED
        BECAUSE A SIMPLE BREACH OF CONTRACT MATTER DOES NOT
        WARRANT PUNITIVE DAMAGES ........................................................................ 14

V.     PLAINTIFFS' QUANTUM MERUIT CLAIM IS DUPLICATIVE OF ITS UNJUST
        ENRICHMENT CLAIM AND FAILS AS A MATTER OF LAW ............................ 15

CONCLUSION ..................................................................................................................... 16

3391157v1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abernathy-Thomas Eng'g Co. v. Pall Corp.*,
    103 F. Supp.2d 582 (E.D.N.Y. 2000) ....................................................................12

*Altayyar v. Etsy, Inc.*,
    731 F. App'x 35 (2d Cir. 2018) .............................................................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................2

*Barrett v. PJT Partners Inc.*,
    2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017)........................................................2

*Bongiorno v. Baquet*
    2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021).....................................................9

*Brown v. Lockwood*,
    76 A.D.2d 721, 432 N.Y.S.2d 186 (1980) ...........................................................7

*C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.*,
    419 F.Supp.2d 419 (S.D.N.Y. 2005)....................................................................3

*In re Columbia Tuition Refund Action*,
    523 F. Supp.3d 414 (S.D.N.Y. 2021)..................................................................14

*Dunham v. Covidien, LP*,
    498 F. Supp. 3d 549 (S.D.N.Y. 2020)...............................................................5, 9

*In re Dynex Capital, Inc. Sec. Litig.*,
    2009 WL 3380621 (S.D.N.Y. Oct. 19, 2009).......................................................9

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)...............................................................................11

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004)...............................................................................11

*Falkner v. Verizon Communications, Inc.*,
    156 F. Supp. 2d 384 (S.D.N.Y. 2001).................................................................11

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
    2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010)...................................................10

3391157v1

*Glob. Energy and Mgt., LLC v. Xethanol Corp.*,
    2009 WL 464449 (S.D.N.Y. Feb.24, 2009).........................................................5

*Harries v. Stark*,
    2018 WL 2357258 (S.D.N.Y. Mar. 30, 2018) ...............................................3

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015)..........................................................13

*Hotel Constructors, Inc. v. Seagrave Corp.*,
    574 F.Supp. 384 (S.D.N.Y.1983)..................................................................7

*Hydro Investors Inc. v. Trafalgar Power, Inc.*,
    227 F.3d 8 (2d Cir.2000)................................................................................6

*In re ITT Educ. Services, Inc. Sec. and Shareholder Derivatives Litig.*,
    859 F. Supp. 2d 572 (S.D.N.Y. 2012).........................................................6

*JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*,
    189 F. Supp. 2d 24 (S.D.N.Y. 2002)............................................................3

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001).......................................................................12

*Kregos v. Associated Press*,
    3 F.3d 656 (2d Cir. 1993) ...........................................................................12

*Kulas v. Adachi*,
    1997 WL 256957 (S.D.N.Y. May 16, 1997) .............................................4

*Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.*,
    176 F. Supp. 2d 199 (S.D.N.Y. 2001).......................................................15

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)........................................................................11

*Longhi v. Lombard Risk Sys., Inc.*,
    2019 WL 4805735 (S.D.N.Y. Sept. 30, 2019)..........................................16

*Loreley Fin. (Jersey) No. 3 Ltd. v Wells Fargo Sec., LLC*,
    13 F.4th 247 (2d Cir 2021) ..................................................................10, 11

*Mateo v. Senterfitt*,
    918 N.Y.S.2d 438 (1st Dep't 2011) ..........................................................10

*Matsumura v Benihana Nat. Corp.*,
    542 F Supp 2d 245 (S.D.N.Y, 2008)...........................................................6

iv

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005).................................................................................15

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993)..................................................................................5

*N. Shipping Funds I, LLC v. Icon Capital Corp.*,
    921 F. Supp. 2d 94 (S.D.N.Y. 2013).....................................................................13

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
    460 F. Supp. 3d 481 (S.D.N.Y. 2020)...................................................................11

*Ricatto v. M3 Innovations Unlimited, Inc.*,
    2019 WL 6681558 (S.D.N.Y. Dec. 6, 2019) ..........................................................3

*Shak v. Adelphi Univ.*,
    549 F. Supp. 3d 267 (E.D.N.Y. 2021) ..................................................................14

*Shields v. Citytrust Bancorp, Inc*,
    25 F.3d 1124 (2d Cir. 1994)..................................................................................12

*Spread Enterprises, Inc. v. First Date Merchant Services Corp.*,
    2012 WL 3679319 (E.D.N.Y. Aug. 22, 2012).......................................................13

*Stewart v. Jackson & Nash*,
    976 F.2d 86 (2d Cir.1992).......................................................................................6

*Vtech Holdings. Ltd. v. Pricewaterhouse Coopers, LLP*,
    348 F. Supp. 2d 255 (S.D.N.Y. 2004)....................................................................9

*W.B. David & Co. v. DWA Communications, Inc.*,
    2004 WL 369147 (S.D.N.Y. Feb. 26, 2004)...........................................................4

*Z-Axis Tech Sols., Inc. v. Richmond Capital Group, LLC*,
    2018 WL 1088008 (S.D.N.Y. Feb. 14, 2018)........................................................15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 2

Fed. R. Civ. P 9(b). .........................................................................................*passim*

Defendants Idin Dalpour ("Dalpour") and Maxben Holdings, LLC ("Maxben") (collectively, "Defendants"), through counsel, submit the following Memorandum of Law in support of its Motion to Dismiss Counts One, Two, Four, Five, Nine, Ten, Twelve, Thirteen and Sixteen of Plaintiffs DRC LV Ventures, LLC, Scott Schroeder ("Schroeder"), Marine Park Investments, LLC and Greenway Financial Group, LLC's (collectively, "Plaintiffs") Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiffs' Complaint arises out of written contracts between Plaintiffs and Maxben and/or Dalpour regarding various investments and loans between the parties.   Though the parties have been partners in several successful real estate investments and other ventures over the years, and Dalpour has always viewed and considered Schroeder a mentor, Plaintiffs have now turned on and blamed Defendants for their own liquidity issues and poor investment results on unrelated matters. A pleading, however, should not be utilized as means of catharsis, which is ultimately what the Complaint here comprises: a litany of grievances by ungrateful and disgruntled parties for whom Plaintiffs generated significant returns in the past, and in the case of Schroeder, went above and beyond to cover obligations that Schroeder was responsible for.   Not surprisingly, when the Court looks beyond these grumblings, the Complaint's allegations themselves are wholly without merit and fail as a matter of law.

Though Plaintiffs concede that the genesis of their allegations arise from purported breaches of loan agreements, they wrongly attempt to recast a basic breach of contract claim into a fraud claim by included a laundry list of statements by Mr. Dalpour reflecting his good faith attempts to comply with those agreements.  As a matter of law, these fraud claims are barred and fail to satisfy any of the elements of a fraud claim with the necessary specificity of Rule 9(b).

1

Rather, Plaintiffs hope to bypass Rule 9(b)'s requirements by simply overwhelming the Court with alleged statements by Mr. Dalpour and concluding (without any facts or basis) that they were intentionally false without satisfying the elements of a fraud claim.

The remaining causes of actions, breach of the covenant of good faith and fair dealing, unjust enrichment, and quantum meruit, all fail as a matter of law, since each cause of action is duplicative and solely based on Plaintiffs' breach of contract claim.  As such, Counts One, Two, Four, Five, Nine, Ten, Twelve, Thirteen and Sixteen of the Complaint should be dismissed.

## <u>LEGAL STANDARD</u>

A motion to dismiss must be granted where, as here, a complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570) (2007)).  Although courts generally assume the truth of "well-pleaded factual allegations" on a motion to dismiss, that assumption does not apply to "legal conclusion" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678-79 (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

In addition, where a plaintiff alleges fraud and breach of fiduciary duty, as Plaintiffs do here, the plaintiff must also satisfy the heightened pleading standard of Rule 9(b), as detailed more fully herein.  *See Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 37 (2d Cir. 2018).  A compliant that fails to satisfy these exacting pleading standards must also be dismissed.  *See, e.g. Barrett v. PJT Partners Inc.*, No. 16-cv-2841, 2017 WL 3995606, *3 (S.D.N.Y. Sept. 8, 2017).

2

**I.    PLAINTIFFS' FRAUD CLAIMS SHOULD BE DISMISSED AS THEY ARE DUPLICATIVE OF PLAINTIFFS' BREACH OF CONTRACT CLAIMS**

Plaintiffs' fraud claims are solely based on purported statements Mr. Dalpour made regarding his expectations and efforts to pay Defendants under the parties' contracts.  While those efforts and expectations did not come to fruition in a timely manner, Plaintiffs cannot rely on those statements to convert a simple breach of contract claim into fraud.

New York has long held that a claim for fraud or fraudulent inducement "predicated upon an insincere promise of future performance" that merely "concern[s] the performance of the contract itself…is subject to dismissal as duplicative of the claim for breach of contract." *Harries v. Stark*, 2018 WL 2357258, at *6 (S.D.N.Y. Mar. 30, 2018) (internal quotation marks omitted). Indeed, a contract claim "cannot be converted into a fraud claim by simply alleging that the promisor intended not to perform its promise." *JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 189 F. Supp. 2d 24, 26 (S.D.N.Y. 2002); *see Ricatto v. M3 Innovations Unlimited, Inc.*, 2019 WL 6681558, at *10 (S.D.N.Y. Dec. 6, 2019) (fraud claim dismissed because the "facts forming the basis of this fraud claim—Defendants' promise to make payments, coupled with their ultimate inability to do so—are identical to the facts undergirding Plaintiffs'" breach of contract claim).

To state a fraud claim that is separate and apart from a coexistent breach of contract claim, the plaintiff must (i) demonstrate a legal duty "separate from the duty to perform under the contract;" or (ii) "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract" or (iii) seek "special damages that are caused by the misrepresentation and unrecoverable as contract damages." *C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.*, 419 F.Supp.2d 419, 430 (S.D.N.Y. 2005).  Plaintiffs' Complaint fails to satisfy any of these circumstances.

Count One vaguely asserts that Mr. Dalpour knowingly made false statements to DRC LV since at least January 2023 to "delay its collection efforts."  Compl. ¶ 58.[1]  While the Complaint is vague and unclear as to what statements are being referenced, as discussed more fully below, presumably DRC LV is referring to its purported efforts to seek payments pursuant to the DRC LV May 2022 Agreement (Compl. ¶ 29), the July 28, 2023, settlement agreement entered into between DRC LV, Maxben Holdings and Mr. Dalpour (Compl. ¶ 46), or the August 2023, agreement.  Count Two likewise asserts that Mr. Dalpour knowingly made false statements "to delay collection efforts by Mr. Schroeder and his entities." Compl. ¶ 62.  Again, while unclear, it appears that Count Two is referring to Mr. Shroeder and his entities' efforts to seek payments pursuant to the August 1, 2022, agreement between Maxben Holdings and Greenway Financial (Compl. ¶ 40), or any of their mutual real estate investments.  In short, Count One and Count Two are solely based on Defendants' statements regarding their intention to perform under the parties' agreements.

Indeed, Count One and Count Two are simply recastings of Plaintiffs' breach of contract claims with an added allegation of fraudulent intent and the inclusion of the parties' correspondences.  Neither Count One nor Count Two seeks any special damages caused by the purported misrepresentations that would not be recoverable as contract damages. *See* Compl. ¶¶ 60, 64.  Count One and Count Two also fail to establish a duty outside of Maxben and Mr. Dalpour's obligations under the parties' agreements.  *See Kulas v. Adachi*, 1997 WL 256957, at *9 (S.D.N.Y. May 16, 1997) (fraud claim dismissed because "[p]laintiff's fraud claim does not rely on a separate legal duty").  Finally, neither Count One nor Count Two assert any purported misrepresentation unrelated to the parties' contractual agreements.  *See W.B. David & Co. v. DWA*

---

[1] Citations to "Compl." refer to the Complaint filed in this matter which is attached as Exhibit A to the Declaration of Marshall O. Dworkin, Esq.

*Communications, Inc.*, 2004 WL 369147, at \*5 (S.D.N.Y. Feb. 26, 2004) ("For a fraudulent misrepresentation to be collateral or extraneous to a contract, it must be a promise to do something other than what is expressly required by the contract.").  For these reasons, Count One and Count Two should be dismissed as a matter of law.

## II.    PLAINTIFFS' FRAUD CLAIMS ALSO FAIL TO SATISFY THE HEIGHTENED PLEADING STANDARD OF RULE 9(b)

A cause of action sounding in fraud is also subject to the heightened pleading standard under Fed. R. Civ. P. 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Under Rule 9(b), allegations of fraud "must: (1) specify the statement that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993).

### a.    Plaintiffs Fail To Identify With Specificity What Statements They Relied Upon To Support Their Fraud Claims

Plaintiffs fail to satisfy the first element of their fraud claims by failing to specify which statements were fraudulent.  *See Mills*, 12 F.3d at 1175.  Though the Complaint contains a laundry list of statements made by Mr. Dalpour, Plaintiffs have failed to "identify which statements or representations made by the defendant were false." *Dunham v. Covidien, LP*, 498 F. Supp. 3d 549, 563 (S.D.N.Y. 2020).  In Count One and Count Two, Plaintiffs insufficiently allege vaguely that "Mr. Dalpour made false and misleading statements…as described above.  In particular, since at least January 2023, Mr. Dalpour knowingly made false statements…"  Compl. ¶¶ 58, 62.  It is utterly unclear which statements Plaintiffs are referring to, whether they are relying on statements before January 2023, or why these particular statements are fraudulent.  *See Glob. Energy and Mgt., LLC v. Xethanol Corp*., 2009 WL 464449, at \*4 (S.D.N.Y. Feb.24, 2009) ("Plaintiff should make certain that its next complaint alleges, with specificity, which statements by defendants it

claims are false…").  As a result, Plaintiffs cannot satisfy the specificity requirement of Rule 9(b) when it is "unclear which statements are alleged to be misleading." *In re ITT Educ. Services, Inc. Sec. and Shareholder Derivatives Litig.*, 859 F. Supp. 2d 572, 577 (S.D.N.Y. 2012) ("vague and disorganized allegations" do not satisfy heightened pleading standards).

> **b.  Plaintiffs Cannot Identify Any Fraudulent Statements To Support Count One or Count Two Of The Complaint**

Glaringly absent from Plaintiffs' Complaint are any actual allegations of fraudulent statements.  While the Complaint includes a laundry list of statements made by Mr. Dalpour in his intentions and hopes to satisfy Maxben's obligations in a timely manner, each of these statements relate to Mr. Dalpour's intent and efforts to pay—a textbook category of statements courts *do not* considered fraudulent.  Moreover, Plaintiffs do not allege that any of the statements made by Mr. Dalpour are false.  Rather, Plaintiffs simply hope that the Court assumes the statements are false.

> **i.  Predictive or Opinion Statements of Future Events Are Not Fraudulent Statements**

It is axiomatic that "predictive or opinion statements about future events, without more, are not misrepresentations."  *Matsumura v Benihana Nat. Corp.*, 542 F Supp 2d 245, 252 (S.D.N.Y, 2008).  As discussed above, promissory statement of what will be done in the future gives rise only to a breach of contract cause of action. *See Stewart v. Jackson & Nash*, 976 F.2d 86, 88–89 (2d Cir.1992); *see also  Hydro Investors Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 21 (2d Cir.2000) ("The alleged negligent misstatements all relate to promised future conduct, if misstatements they be, and there is a lack of any element of misrepresentation as to an existing material fact so as to come within the doctrine of negligent misrepresentation ....") (quotation omitted).  Though misrepresentations of present or past fact have the potential to create liability for the speaker, "[m]ere unfulfilled promissory statements as to what will be done in the future are

not actionable" as such. *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 194 (1980); *Hotel Constructors, Inc. v. Seagrave Corp.,* 574 F.Supp. 384, 387 (S.D.N.Y.1983).

Most, if not all, of the purported fraudulent statements made to DRC LV are predictive statements or opinions of future events and are not fraudulent. *See* Compl. 36(a) ("[s]orry for the delay…"); ¶ 36(b) ("you will see it hit tomorrow morning…If you don't see it by late morning, please let me know.  The delay won't happen again"); ¶ 36(c) ("payment will be received on your end by Friday.  Next month will *most likely* be a week late as well") (emphasis added); ¶ 36 (d) ("[t]his month won't be as delayed as last month…September will undoubtedly go back to a normal, consistent pay-date of the 15th…"); ¶ 36(e) ("your investors *will receive* august [sic] distribution before end of this month"); ¶ 36(f) ("Mr. Dalpour apologized and promised that he would send the funds that week"); ¶ 47(b) ("*we expect those funds to reach Mr. Dalpour's chase [sic] account* today in a timely fashion…*we believe* that this will not be an issue going forward"); ¶ 47(c) ("[h]e has been told that [the funds] *should arrive* in his Chase account no later than tomorrow morning.  Either way, he will transfer those funds to your clients immediately"); ¶ 47(d) ("Idin was told by representatives at Wells Fargo and TD that the *funds will arrive* in his account on Monday"); ¶ 47(e) ("We have been investigating and have now learned the wire transfer from TD Ameritrade was sent to the wrong Chase account…"); ¶ 47(g) ("*We fully expect* to be able to show you evidence of the $200,000 wire…tonight"); ¶ 47(h) ("Mr. Dalpour escalated the issue surrounding this wire to more senior figures at his Chase bank and it is our understanding that Chase initiated the wire to DRC LV…"); ¶ 47(i) ("It is our understanding that there is more progress being made, and these issues continue to be escalated internally at Chase Bank…we are working diligently to get these funds released to your clients").

7

Likewise, statements to Schroeder and the Schroeder entities are also largely predictive statements or opinions of future events and are not fraudulent. *See* Compl. ¶ 42(a) (payment would be made to Schroeder "as soon [as] Mr. Dalpour was able to do so and that River Ridge would pay out that week"); ¶ 42(b) (Mr. Dalpour stated he "planned to provide funds from a check he had received…" and "he would send $55,000 on February 10, 2023"); ¶ 42(d) (Mr. Dalpour intended to "get [Mr. Schroeder] something every day or two in regard to SD Texas…"); ¶ 42(e) ("he was still trying to get the money together to pay Mr. Schroeder for River Ridge"); ¶ 42(f) ("Mr. Dalpour stated that he would receive $50,000 after the markets closed, that Mr. Schroeder should see that money the next day"); ¶ 42(g) ("Mr. Dalpour told Mr. Schroeder that he had run into a wire issue and would resend the $50,000"); ¶ 42(h) ("Mr. Dalpour informed Mr. Schroeder…he intended to repay Mr. Schroeder…expecting repayment within one month…Mr. Dalpour stated that he would pay Mr. Schroeder $365,000 the following week"); ¶ 42(i) ("Mr. Dalpour told Mr. Schroeder that he was trying to send $100,000…by April 28, 2023, and that payments from [Maxben] would be made by April 28, 2023, or May 1, 2023; ¶ 42(k)(i) ("SD Texas I funds owed will be paid as I can pay down my line of credit"); ¶ 42(k)(ii) ("He would pay what was owed…"); ¶ 42(l) ("I'll get that payment out to you today.  I'll be in touch when it's out"); ¶ 42(m) ("This will be in your acct [sic] tomorrow. Sorry for the delay").  Lastly, the representations made in Paragraph 54 are likewise statements or opinions of future events, or are simply explanations of physical documents that were provided to Plaintiffs' counsel. *See* Compl. ¶¶ 54(d), (f)

Therefore, none of these statements is fraudulent or can support either Count One or Count Two of the Complaint.

### ii.    Plaintiffs Fail To Sufficiently Allege That Any Of The Statements Were False

Not only have Plaintiffs failed to identify any fraudulent statements, they have also failed with specificity to allege *how* any of those statements were false or fraudulent.  *See Dunham*, 498 F. Supp. 3d at 563 (fraud claim dismissed because plaintiff "still has not alleged any factual basis for the claims that the defendant's representations were false"); *See In re Dynex Capital, Inc. Sec. Litig.*, 2009 WL 3380621, *6 (S.D.N.Y. Oct. 19, 2009) ("to form the basis of liability an affirmative statement must be false").  Plaintiffs cannot "simply assert that a particular statement is false or misleading; rather they must demonstrate with specificity why and how that is so" for each purportedly fraudulent statement.  *Bongiorno v. Baquet* 2021 WL 4311169, *20 (S.D.N.Y. Sept. 20, 2021).  Plaintiffs "cannot rest on their say-so that these statements are fraudulent; they must explain why."  *Id*. (citing *Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir. 2004)).

The Complaint fails to assert any facts or set forth with any specificity what statements were false – much less knowingly false – when asserted by Mr. Dalpour.  Rather, the Complaint entirely rests on Plaintiffs' own conspiracy theory that since Defendants' intents and efforts to satisfy obligations in a timely manner did not materialize, then Mr. Dalpour's statements must have been fraudulent.  Such theories are not sufficient to satisfy Rule 9(b) and are therefore must be dismissed.

### iii.    Plaintiffs Cannot Rely On Statements Mr. Dalpour Passed Along From Third-Parties

There can be no fraud claim where, as was the case here, a defendant simply repeats a representation by a third party and does not misstate the representation.  *See Vtech Holdings. Ltd. v. Pricewaterhouse Coopers, LLP*, 348 F. Supp. 2d 255, 271 (S.D.N.Y. 2004) (dismissing claims where "[a]lthough…[defendant] may have been negligent in failing to investigate the accuracy of this opinion, [it] does not misstate the [third-party] representation letter upon which it was based");

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*, 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) (statements accurately relaying the representations of others, even if those representations are false, are not actionable against party that simply relayed them); *Mateo v. Senterfitt*, 918 N.Y.S.2d 438, 440 (1st Dep't 2011) ("misrepresentations attributable to [third party]" do not state fraud claim).  In this case, most of the purported misrepresentations made by Mr. Dalpour expressly state that he is relaying information provided to him by third-parties, particularly the banks and investment companies he was transferring funds from to Plaintiffs.  *See, e.g.* Compl. ¶¶ 42(a), (b), (g), (h), j(i), (iii), k(iii), (o), 47(a-i), 49(a), (e), (f), 54(a), (g), (h).  The Complaint fails to allege, much less specifically state facts or allegations, that Mr. Dalpour misstated or misrepresented the information he relayed to Plaintiffs.  Counsel for Defendants even conceded to Plaintiffs that "[w]e can only relay what we are learning from Chase (which itself has provided inaccurate information on when funds would be available) but Mr. Dalpour and we are working diligently to get these funds released to your clients."  Compl. ¶ 47(i).  As such, the Complaint fails to allege any specific fraud by Mr. Dalpour within these statements.

### iv.   None Of The Purportedly Fraudulent Statements Made Through Counsel Can Support DRC LV's Fraud Claim

Plaintiffs attempt to shoehorn a fraud claim on Defendants by claiming that all of the statements included in Paragraph 47 were statements made by Mr. Dalpour "through counsel." Compl. ¶ 43.  But reliance on an intermediary can only form the basis of a fraud claim when that intermediary "acts as a scrivener by transcribing and distributing a defendant's representations without filtering or modification.  *Loreley Fin. (Jersey) No. 3 Ltd. v Wells Fargo Sec., LLC*, 13 F.4th 247, 260 (2d Cir 2021).  When the defendants' purported misrepresentations are "filtered through" a third party's "own process of evaluation" or the third party plays "a significant role in choosing what information it wanted to receive and, in addition, what it deemed worthy of

communicating," the third party has not acted as a mere conduit and the theory is not viable. *Id.* In this case, counsel for Defendants did not serve as a scrivener but worked directly with Defendants and Plaintiffs to try and resolve the banking issues. Any statements made through counsel cannot support DRC LV's fraud claim as a matter of law.

### c. Plaintiffs Fail To Allege The Requisite Scienter To Support A Claim Of Fraud

Plaintiffs have also failed to adequately plead scienter, a required element of common law fraud in New York. Although under Rule 9(b) "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally" this leeway is not a "license to base claims of fraud on speculation and conclusory allegations." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted). To withstand a motion to dismiss under Rule 9(b), plaintiffs must provide *facts* and "detail specific…information known to the defendant that was inconsistent with the representation in question." *Falkner v. Verizon Communications, Inc.*, 156 F. Supp. 2d 384, 400 (S.D.N.Y. 2001). Alternatively, a party must assert facts "that give rise to a *stron*g *inference* of fraudulent intent" by demonstrating the defendant had "both motive and opportunity to commit fraud" or "circumstantial evidence of conscious misbehavior or recklessness." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 494 (S.D.N.Y. 2020) (emphasis added); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)). In this case, Plaintiffs cannot satisfy either option.

Plaintiffs have not alleged any facts to give rise to a strong inference that Defendants had a motive and opportunity to commit fraud. To do so, Plaintiffs would have to demonstrate that Defendants would benefit in some "concrete and personal way" through its purported misrepresentations. *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). In this case, Defendants do not assert any facts that would give rise to a strong inference Defendants had a motive or opportunity to commit fraud. The only

allegation relating to Defendants' motive, is in Count One and Count Two of the Complaint where it is alleged that "Mr. Dalpour knowingly made false statements to induce DRC LV to delay its collection efforts and to delay the initiation of this lawsuit." Compl. ¶¶ 58, 62.  Courts, however, have found that benefits do not "accrue from a short respite from an inevitable day of reckoning." *Shields v. Citytrust Bancorp, Inc*, 25 F.3d 1124, 1130 (2d Cir. 1994).  By Plaintiffs' logic, any person who enters into a settlement agreement and/or simply shares "mere misguided optimism" about their ability to satisfy certain obligations would be liable for fraud under Plaintiffs' theory.

Similarly, Plaintiffs have not set forth facts showing conscious misbehavior or recklessness.  Plaintiffs must show that the alleged reckless conduct was "highly unreasonable and which represents an extreme departure from the standards of ordinary care…" *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  Again, Plaintiffs have not set forth any facts to show "highly unreasonable" actions by Defendants or made any assertions that Defendants' conduct was reckless, illegal or an extreme departure from a standard of ordinary care.

### d. Plaintiffs Fail To Allege Economic Loss Or Damages Resulting From The Purported Fraud

Under New York law, "damages are an essential elements of a fraud claim." *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp.2d 582, 599 (E.D.N.Y. 2000).  Damages must be "out-of-pocket" expenses in fraud cases, entitling plaintiffs to damages "solely for their actual pecuniary losses." *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) (plaintiffs must allege pecuniary losses that are "the direct, immediate, and proximate result of the misrepresentation").

Plaintiffs have failed to allege any actual pecuniary loss that resulted from Mr. Dalpour's purported misstatements or fraud.  Rather, Count One and Count Two both state that Plaintiffs "relied on these false statements in delaying its collection efforts and this lawsuit." Compl. ¶¶ 59,

63.  Delay, however, is not a pecuniary loss or an "out-of-pocket" expense that is required to maintain an action for fraud.  Count One and Count Two both state that damages will be "in an amount to be determined at trial" but neither claim has set forth any losses that could be determined at trial or that even exist.  For this reason, Counts One and Two should be dismissed.

### III.  PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT CLAIMS FAIL AS A MATTER OF LAW

Counts Four, Five, Nine, Ten, Twelve, and Thirteen all assert breach of the covenant of good faith and fair dealing and unjust enrichment against Defendants based on the same allegations and claims relating to their breach of contract actions and therefore must be dismissed.  *See, e.g., N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 107 (S.D.N.Y. 2013); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 295, 298 (S.D.N.Y. 2015).

#### a.  Good Faith and Fair Dealing Allegations

Plaintiffs' Counts Four, Nine, and Twelve all assert a breach of the covenant of good faith and fair dealing based on the same allegations or "where the same conduct is the predicate for both" breach of contract and good faith and fair dealing claims.  *Spread Enterprises, Inc. v. First Date Merchant Services Corp.*, 2012 WL 3679319, at *3 (E.D.N.Y. Aug. 22, 2012) (citation omitted).  Counts Four, Nine and Twelve all state that their claims are based on Maxben's failure "to meet its repayment obligations" based on the very same contracts they allege were breached in Counts Three, Eight and Eleven.  Moreover, Counts Four, Nine and Twelve all seek the very same damages sought in their Breach of Contract claims.  *See* Compl. ¶¶ 71, 76, 97, 102, 114, 119. Therefore, Plaintiffs' good faith and fair dealing claims are duplicative of their breach of contract claims and must be dismissed.

3391157v1

**b. Unjust Enrichment**

Similar to the covenant of good faith and fair dealing, an unjust enrichment claim only exists "in the absence of an affirmative agreement." *Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267, 274 (E.D.N.Y. 2021) (citation omitted). An unjust enrichment claim is not available where it "simply duplicates, or replaces, a conventional contract or tort claim." *Id. (*citing *Goldemberg v. Johnson & Johnson Consumer Cos., Inc*., 8 F. Supp.3d 467, 483 (S.D.N.Y. 2014)). In this case, Plaintiffs' Counts Five, Ten, and Thirteen are based on Maxben's purported failure to "repay" Plaintiffs under their agreements, resulting in Maxben being "unjustly enriched." *See* Compl. ¶ 79, 105, 122. As a matter of law, Plaintiffs' unjust enrichment claims fail and must be dismissed since they are based on the exact same allegations and damages contained in Plaintiffs' breach of contract claims. Conceding this point, Plaintiffs attempt to circumvent this issue by pleading unjust enrichment "in the alternative," *see* Compl. ¶ 81, 107, 124, but claims that are "indistinguishable from contract claims pleaded in the alternative in the same complaint" still fail as a matter of law and must be dismissed. *In re Columbia Tuition Refund Action*, 523 F. Supp.3d 414, 430 (S.D.N.Y. 2021) (collecting cases).

For these reasons, Counts Four, Five, Nine, Ten, Twelve, and Thirteen should be dismissed as a matter of law.

## IV. PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED BECAUSE A SIMPLE BREACH OF CONTRACT MATTER DOES NOT WARRANT PUNITIVE DAMAGES

Emblematic of Plaintiffs' meritless attempt to re-allege a simple breach of contract matter into allegations of fraud is their request for punitive damages, which is meritless and should be stricken. Under New York law, "punitive damages are not available in an ordinary fraud case." *Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 207 (S.D.N.Y. 2001) (striking punitive damages claim because "under New York law, punitive damages are not

14

available in an ordinary fraud case"). Punitive damages are available only in extraordinary fraud cases where the "fraud is aimed at the public generally, is gross, and involves high moral culpability." *Z-Axis Tech Sols., Inc. v. Richmond Capital Group, LLC*, 2018 WL 1088008, at *3 (S.D.N.Y. Feb. 14, 2018) (citing *Ladenburg*, 176 F. Supp. at 207). The "misconduct must be egregious" and "characterized as 'gross' and 'morally reprehensible,'" or involve "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Id.*

Plaintiffs' fraud claims, as discussed above, fail to adequately allege the requisite elements, and, even if they had, none of the allegations rises to a level of fraud that is tantamount to criminality and would support including punitive damages. Rather, each alleged statement made by Mr. Dalpour relates to his expectations or efforts to satisfy contractual obligations to Plaintiffs. Though certain payments were not timely or did not materialize on the timeline Mr. Dalpour expected, there are no allegations that he behaved in a near-criminal manner or with a criminal indifference to his obligations. Rather, his statements were truthful and conveyed his efforts to comply with certain obligations to Plaintiffs. For this reason, Plaintiffs' request for punitive damages should be stricken.

## V. PLAINTIFFS' QUANTUM MERUIT CLAIM IS DUPLICATIVE OF ITS UNJUST ENRICHMENT CLAIM AND FAILS AS A MATTER OF LAW

Under New York law, "quantum meruit and unjust enrichment claims are analyzed together as a single quasi-contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). The reason is that quantum meruit and unjust enrichment claims "are not separate causes of action." *Id.* Similar to unjust enrichment, New York "does not permit recovery in quantum meruit…if the parties have a valid, enforceable contract that governs the same subject as the quantum meruit claim." *Longhi v. Lombard Risk Sys., Inc.*, 2019 WL 4805735, at *8 (S.D.N.Y. Sept. 30, 2019) (citation omitted).

In this case, Plaintiffs' Quantum Meruit case is duplicative of its Breach of Contract claim in Count Eleven.  Count Eleven states that Marine Park "loaned $665,000 to Mr. Dalpour for use in the River Ridge Project" and that "Marine Park performed **under the agreement** by providing Mr. Dalpour with $665,000."  Compl. ¶¶ 110-111.  Likewise the Quantum Meruit claim in Count Sixteen states that Marine Park "conferred a benefit upon Mr. Dalpour by lending him $665,000 to be used in the River Ridge project."  Clearly, the quantum meruit claim is based solely on the purported agreement surrounding the loan Marine Park provided in relation to the River Ridge Project.  As a result, Count Sixteen of the Complaint should be dismissed.

## <u>CONCLUSION</u>

For the reasons stated herein, Defendants respectfully request that the Court dismiss Counts One, Two, Four, Five, Nine, Ten, Twelve, Thirteen, and Sixteen of the Complaint.


Dated: New York, New York
       October 5, 2023

Respectfully submitted,

**MORITT HOCK & HAMROFF LLP**

By __ */s/ James P. Chou* _____
       James P. Chou
       Marshall O. Dworkin
       1407 Broadway, 39th Floor
       New York, NY 10018
       (212) 239-2000
       jchou@moritthock.com
       mdworkin@moritthock.com
       *Attorneys for Defendants*