**MORRISON FOERSTER**

**MEMO ENDORSED**

250 WEST 55TH STREET
NEW YORK
NEW YORK  10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

April 15, 2024

Writer's Direct Contact
+1 (212) 336-4142
PSkinner@mofo.com

**VIA ECF**
Honorable Jessica G. L. Clarke
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *DRC LC Ventures, LLC v. Dalpour,* 23 Civ. 7827 (JGLC)

Dear Judge Clarke:

We represent Plaintiffs in the above-referenced matter. Pursuant to Rule 4(k) of the Court's Individual Rules and Practices in Civil Cases, we submit this letter jointly with Defendants in connection with Plaintiffs' motion to compel the production of communications pursuant to the crime-fraud exception to the attorney-client privilege.[1]

## Plaintiffs' Position

Plaintiffs seek certain of Defendants' communications with their former law firm, Morritt Hock & Hamroff ("MHH"), concerning false statements that Idin Dalpour made to MHH that MHH then passed onto Plaintiffs. Defendants have asserted attorney-client privilege over all of their communications with MHH. Defendants' communications with MHH concerning MHH's false statements to Plaintiffs should be produced under the crime-fraud exception to the attorney-client privilege because those false statements covered up Defendants' past frauds and facilitated Defendants' ongoing frauds.

The crime-fraud exception applies where there is evidence that the communications at issue "were in furtherance" of "a crime or fraud" that has been attempted or committed. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). In the Second Circuit, a party wishing to invoke the exception must prove (1) "that the client communication or attorney work product in question was itself in furtherance of the crime or fraud" and (2) "there is probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity." *Id.*, 68 F.3d at 40. It does not matter whether counsel knowingly participated in the crime or was an unwitting participant. *United States v. Spinosa*, (PAE), 2021 WL 2644936, at *6 (S.D.N.Y. June 28, 2021).

---

[1] On April 11, 2024, Peter Skinner from Morrison Foerster and John Thomson from Thompson & Skrabanek conferred by telephone for approximately thirty minutes but were unable to reach an agreement as to the production of the requested records. *See* Fed. R. Civ. P. 37(a)(1).

**MORRISON FOERSTER**

April 15, 2024
Page Two

Mr. Dalpour's crimes include making fraudulent statements to Plaintiffs to induce them to lend money to his purported Las Vegas hospitality business. The proof of those crimes is overwhelming and includes the following: (1) a forged contract that Mr. Dalpour provided during due diligence; (2) bank account records showing Mr. Dalpour used payments from investors not to operate the business but to pay other investors; and (3) recorded statements where Mr. Dalpour admits making false statements to Plaintiffs. If necessary, Plaintiffs will submit this evidence (and more like it) to the Court in support of their motion.

During the summer of 2023, Mr. Dalpour used MHH to facilitate his crimes. (Dkt. 24 ¶¶ 44-76). Plaintiffs had threatened to sue if Defendants did not repay their loans. Through MHH, Mr. Dalpour provided Plaintiffs with false information and falsified documents to cover up his past criminal conduct and to continue his crimes by inducing Plaintiffs to renegotiate their loan agreements and to forego legal action.

Defendants' attorneys made at least five categories of false statements to Plaintiffs: (1) that Defendants' operating partner in Las Vegas, MGM, was distributing funds to Defendants; (2) that Defendants' payments were delayed by technical issues at their banks; (3) that Mr. Dalpour was pledging assets to Plaintiffs that he had not pledged to others; (4) that Defendants had funds in bank accounts that would be used to pay Plaintiffs; and (5) that Mr. Dalpour was selling stock to raise money to pay Plaintiffs. Plaintiffs can prove these statements were false because (1) MGM had no dealings with Defendants and was not distributing money to Defendants; (2) Defendants did not initiate the bank transfers that allegedly suffered from technical issues; (3) Mr. Dalpour had already pledged to others the assets that he pledged to Plaintiffs; (4) Defendants did not have the funds they claimed to have on deposit in bank accounts; and (5) Mr. Dalpour did not sell the stocks he claimed to have sold. While Plaintiffs cannot outline all of their evidence here, the following examples are demonstrative of Plaintiffs' proof and are sufficient on their own to grant Plaintiffs' motion.

*First*, on August 16, 2023, Mr. Dalpour informed Plaintiffs that MGM would pay him $3 million by the end of the month and that he would send documentation confirming as much. On August 18, 2023, MHH sent a redacted screenshot of an email from an "@mgmhospitality.com" email account purporting to confirm that roughly $3 million would be sent to Mr. Dalpour by the end of August 2023. (Exhibit A). MGM later reported to Plaintiffs' counsel that it was unable to locate "Dalpour" or "Maxben Holdings" as vendors and that it had no records of any payments to them. (Exhibit B). MGM also observed that "while the address '@mgmhospitality.com' was used within the company in the past — it hasn't been in use since 2019." (*Id.*). There is thus probable cause to believe that Mr. Dalpour used MHH to pass on a falsified document to cover up his past frauds (because he had falsely told Plaintiffs from the beginning that MGM was his partner in the hospitality business) and in furtherance of his fraud scheme (because he used the false representation that he would be receiving $3 million from MGM to induce Plaintiffs to renegotiate the terms of their loans).

**MORRISON FOERSTER**

April 15, 2024
Page Three

*Second*, MHH sent Plaintiffs' counsel documents purporting to depict trade confirmations from stock sales that Mr. Dalpour claimed to have executed to raise cash to make payments to Plaintiffs. (Exhibit C). When Plaintiffs received documents directly from TD Securities, however, the trade confirmations were not included in the production, and the account statements did not reflect the trades Mr. Dalpour claimed to have made. (Exhibit D). Because MHH represented to Plaintiffs that they did not have communications with Mr. Dalpour's banks, there is probable cause to believe that Mr. Dalpour sent MHH the falsified TD documents to induce Plaintiffs to renegotiate the terms of their loans.

*Third*, in response to Plaintiffs' demand for evidence of the Las Vegas business's assets, Mr. Dalpour agreed to send bank statements from 2023 for an account that purportedly contained monies received from and paid out to lenders. On July 19, 2023, MHH sent Plaintiffs' counsel redacted summary pages for that account. (Exhibit E). Plaintiffs later obtained the original account statements from the bank, but the summary pages did not match the summary pages that MHH had sent. (Exhibit F). Mr. Dalpour also later admitted to Plaintiffs that the account statements were falsified. Yet again, there is thus probable cause to believe Mr. Dalpour used MHH to cover up and facilitate his crimes.

The crime-fraud exception applies where, as here, a party makes false statements to an attorney knowing those statements will be passed onto a third party in furtherance of a crime. For instance, in *SEC v. Collector's Coffee, Inc.*, Judge Gorenstein held that where an employee "instructed [an attorney] to convey statements she knew were false to the SEC, and made false statements to [another attorney] that she knew would be conveyed to the SEC," "the crime-fraud exception applies to [the employee's] conversations with [the attorneys] that were in furtherance of her efforts to cause the attorneys to give false statements to the SEC." 338 F.R.D. 309, 321 (S.D.N.Y. 2021). As in *Collector's Coffee*, the crime fraud exception applies here because there is an underlying crime — Mr. Dalpour's fraud with respect to the Las Vegas business — and probable cause to believe Mr. Dalpour gave false information to MHH with the intent that MHH would pass that false information to Plaintiffs to defraud Plaintiffs and to cover up and continue that fraud. *Id.*; *United States v. Spinosa*, 2021 WL 2644936, at *6.

### Defendants' Position

Plaintiffs fail to show the two elements required for application of the crime-fraud exception. With regards to the first element—"that the client communication or attorney work product in question was itself in furtherance of the crime or fraud"—Plaintiffs have failed to show, *prima facie*, any crime or fraud at all. Instead, the alleged conduct merely amounts to a futile effort to avoid litigation by misrepresenting—in the course of voluntary settlement discussions—Defendants' financial condition. Even if these allegations are true, they do not amount to a fraud or a crime.

Defendants have not been charged, indicted or otherwise found to have committed any

**MORRISON FOERSTER**

April 15, 2024
Page Four

crime. Plaintiffs' misplaced reliance *SEC v. Collector's Coffee* demonstrates this critical shortcoming in their position. *Collector's Coffee* is inapposite for the simple reason that lying to the SEC is a crime—specifically, a violation 18 U.S.C. § 1001—whereas lying to a private citizen (or even a prestigious corporate law firm) is not. *Collector's Coffee* discusses § 1001 violations at length and details how the party claiming privilege "admitted to violating 18 U.S.C. § 1001 by making 'false, material statements to SEC investigators.'" *Id.* at 316. In this case, neither Plaintiffs nor their counsel are officers of the United States government. Thus, even if Plaintiffs could establish that the allegedly untrue statements were in fact outright lies, lying to them or their counsel about bank balances is not a crime.

*Collector's Coffee* also demonstrates the level of due process which is required to discard the attorney-client privilege, a cornerstone of our legal system. In that case, the client whose right to attorney-client privilege was being challenged, Gail Holt (a former executive of the Defendants), admitted under oath to having her former attorneys "convey statements she knew were false to the SEC." *Id.* at 320. In the present case, there is no such admission. Mr. Dalpour has not even been deposed. Thus, even if lying were a crime, there is no clear basis to establish that Mr. Dalpour has lied, much less committed any fraud or crime. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, M 21–95, 2003 WL 22389169, at *6 (S.D.N.Y. Oct. 21, 2003) (finding that "conclusory allegations of criminal or fraudulent intent" were insufficient to invoke crime-fraud exception).

To the extent Plaintiffs suggest that application of the crime-fraud exception is appropriate because a civil fraud has been wrought upon them, they overlook the elements of fraud, which require the deceived party to incur damages through detrimental reliance on the allegedly fraudulent statements. Plaintiffs' motion is premised on alleged misrepresentations that Mr. Dalpour made to them in summer of 2023, which they say "sought to cover up his past crimes." But there is no indication that Plaintiffs relied upon these alleged misrepresentations, or that they incurred any damages as a result of them. To the contrary, Plaintiffs filed this lawsuit on September 1, 2023—just weeks after the supposedly false promises to pay were made. This shows that Plaintiffs did not rely on Mr. Dalpour's representations at all and did not incur any significant damages as a result. Thus, even if Plaintiffs' allegations of "false statements" are true, those false statements do not amount to fraud, and do not justify application of the crime-fraud exception. *See, e.g., Conopco, Inc. v. Wein*, No. 05 Civ. 09899(RJH)(THK), 2007 WL 1859757, at *8 (S.D.N.Y. June 28, 2007) ("[T]he allegations in the Complaint cannot suffice to establish probable cause to believe that a fraud was perpetrated. Otherwise, through the mere allegation of fraud in a complaint, a party could use the crime-fraud exception to wholly swallow the attorney-client privilege.") (citing *In re Omnicom Grp. Inc. Sec. Litig.*, 233 F.R.D. 400, 405 (S.D.N.Y. 2006)).

With regards to the second part of the two-prong showing—that "there is probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity"—Plaintiffs' arguments

April 15, 2024
Page Five

are unacceptably vague and scattershot, and fail to establish the required "purposeful nexus" between the alleged dishonesty and the involvement of MMH. The Second Circuit has stressed that "the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud" and "where there is probable cause to believe that the *particular* communication with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity." *Roe*, 68 F.3d at 40 (initial emphasis in original). Mere relevance or temporal proximity does not suffice. *Id.*

Plaintiffs have not shown "that the client communication or attorney work product in question was itself in furtherance" of the alleged wrongdoing. Again, Plaintiffs' reliance on cases concerning § 1001 violations is notable here. In that context, an attorney's action of "passing on" false information to the United States government has been found to further a crime. In lying to investigators, the attorney is an instrumentality to the crime in progress, even if the attorney is unaware of the untruthfulness of the representations they make on behalf of their client. *See U.S. v. Zolin*, 491 U.S. 554, 562–63 (1989) (the attorney-client privilege "ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing.") (quoting 8 Wigmore, § 2298).

In the present case, by contrast, Plaintiffs allege that MMH passed along screenshot and documents which had been "falsified" by Mr. Dalpour. But there is no allegation that MMH did anything to further this alleged wrongdoing, and outside of the § 1001 context, relevant authorities weigh against application of the crime-fraud exception for attorneys' "mere transmittal emails that enclose or attach other documents", which is exactly what Plaintiffs' describe above. *La Liberte v. Reid*, No. 18-CV-5398-DLI-JRC, 2024 WL 22781, at *3 (E.D.N.Y. Jan. 2, 2024) ("Such cover communications neither furnish nor request legal advice and do not reveal any privileged communications.") (quoting *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 104-05 (S.D.N.Y. 2017)); *see also Shih v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 568 n.4 (S.D.N.Y. 2021) ("The transmittal email does not contain any confidential information or legal advice and hence is not itself privileged.").

The Court should reject Plaintiffs' hyperaggressive effort to break down Defendants' access to counsel. If Plaintiffs' reasoning were to be endorsed by this court, it would provide a basis for a motion of this nature every time a party suspects a counterparty of making an untruthful statement. Such a broad conception of the crime-fraud exception would swallow attorney-client privilege whole. *See, e.g., Zolin*, 491 U.S. at 571 (1989) ("There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."); *see also Roe*, 68 F.3d at 40 ("The crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud. If it did, the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability.").

**MORRISON FOERSTER**

April 15, 2024
Page Six

                                      Respectfully,

                                      *S/ Peter M. Skinner*
                                      Peter M. Skinner

cc:    John Thompson
       (via ECF)

Plaintiff is directed to file, by **April 25, 2024**, Plaintiff's written requests at issue along with Defendant's responses.

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

Dated: April 23, 2024
       New York, New York